UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CASE NO.

JANET YORK, an individual,

    Plaintiff,
v.

KATHLEEN DURSO,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Janet York ("Plaintiff"), by and through undersigned counsel, sues Defendant, Kathleen Durso ("Defendant"), and in support thereof, states the following:

## PARTIES

1. Plaintiff is a citizen of the State of Florida.

2. Defendant is a citizen of Tennessee.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §1332(a), because the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and because there is diversity among Plaintiff, and Defendant.

4. This Court has supplemental jurisdiction over Plaintiff's Florida state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper pursuant to 28 U.S.C §1391(b)(2), as a substantial part of property that is the subject of this action is situated in this district, and the injuries sustained by Plaintiff occurred in this district.

## FACTS COMMON TO ALL COUNTS

1. On or about October 28, 2021, Plaintiff contacted Defendant *via* telephone in connection Defendant's sale of a horse owned by Defendant named Pharoah.

2. Plaintiff advised Defendant that she was seeking to purchase a horse to be utilized as a trail horse by her, a then sixty-nine (69) year old woman, and to be used by her in the Santa Rosa County Sherriff's posse, as a parade, and search and rescue, horse.

3. When Plaintiff asked Defendant if Pharoah would be suitable for such, Defendant responded that he would be perfect for such use.

4. As a result, Plaintiff traveled to Defendant's barn on October 31, 2020, and was greeted by an individual named Jason, who identified himself as Defendant's representative.

5. Jason was acting as Defendant's agent at all relevant times, and his conduct was within the scope of same, and is therefore imputed to Defendant.

6. While speaking with Jason regarding Pharoah, Plaintiff advised Jason, just as she had advised Defendant, that she was seeking to purchase a horse to be ridden by her as a trail horse, and for her to be used in the Santa Rosa County Sherriff's posse, as a parade, and search and rescue, horse.

7. Like Defendant had done previously, Jason advised Plaintiff that Pharoh would be perfect for such use.

8. Jason advised Plaintiff that in order to mount Pharoah without incident, Pharoah's neck had to be flexed both ways prior to mounting.

9. Plaintiff noticed that Pharoah's left front foot was deformed, and asked Jason about such deformity.

10. Jason assured Plaintiff that Pharaoh had a "clubbed" foot, but that Plaintiff should not worry, as it did not impact Pharaoh's health, or suitability for intended use, and that it was not a "long term issue."

11. Based upon Defendant's, and Jason's, representations that Pharaoh was suitable for his intended use, Plaintiff agreed to purchase Pharaoh for Eight Thousand Dollars ($8,000.00), as evidenced by that certain "Horse Bill of Sale Form" dated October 31, 2020, entered into by and between Plaintiff, and Defendant (the "Bill of Sale"), a copy of which is attached hereto at Exhibit "A."

12. On November 2, 2020, Plaintiff attempted to mount Pharaoh for the first time at her home in Milton, Florida.

13. Prior to mounting him, she flexed his neck both ways, just as she had been instructed to do by Jason.

14. As soon as Plaintiff put her weight in the saddle, Pharaoh bolted, throwing Plaintiff violently to the ground, causing her to lose consciousness.

15. Plaintiff was transported to the Emergency Room at Baptist Gulf Breeze as a result of her injuries.

16. It was determined that Plaintiff was a "level 5 high trauma" patient, and she was airlifted by helicopter to Baptist Trauma Center in Pensacola, Florida, where she was in the intensive care unit for three (3) days.

17. Among other things, Plaintiff had a significant wound to her right calf which would ultimately require two (2) surgeries, including a skin graft, and had suffered multiple rib fractures.

18. Plaintiff is currently in the process of scheduling a third (3rd) surgery for Morel Lavalee, which is a consequence of an accumulation of fluid under the skin as a result of her violent fall off Pharaoh.

19.     Plaintiff had Pharoah examined by Dr. Bastiana Rodebaugh of First Equine Veterinary Services.

20.     Plaintiff was shocked and appalled at the results of such examination.

21.     Despite Jason's assurances that there was no issue with Pharaoh's left front foot, Dr. Rodebaugh determined that Pharaoh was lame in the left front, and that he has a "severe angular limb deformity of the LF fetlock."

22.     Defendant sold Plaintiff a lame horse with a severe, incurable deformity.

23.     Pharaoh clearly is not safe to be ridden by Plaintiff, and not suitable for his intended use.

24.      Plaintiff has rescinded the purchase of Pharoah, and advised Defendant of same.

25.     All conditions precedent to the filing of this lawsuit have occurred, or been waived or excused.

## COUNT I - RESCISSION

26.     Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 – 25 as if more fully set forth at length herein.

27.     Plaintiff agreed to purchase Pharoah in reliance on Defendant's, and Jason's, representations as to Pharoah's health, suitability, and fitness for use.

28.     Plaintiff Defendant, and Jason, fraudulently misrepresented, and intentionally concealed, Pharoah's true condition.

29.     At the time Defendant, and Jason, made the aforementioned misrepresentations, and omissions, of material fact, they knew they were false, and intended that Plaintiff rely on them, which she did, in purchasing Pharoah.

30.      Had Defendant, and Jason, accurately disclosed Pharoah's health, and suitability for intended to use to Plaintiff, Plaintiff would not have executed the Bill of Sale.

31. Such conduct on behalf of Defendant constitutes fraud, mutual mistake, false representations, impossibility of performance, and/or other grounds for rescission or cancellation of the Bill of Sale.

32. Plaintiff has rescinded the Bill of Sale and notified Defendant of such rescission, and offered to return Pharoah in exchange for all amounts Plaintiff paid by Plaintiff for Pharoah.

33. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands rescission of the Bill of Sale, and rescissory damages, including attorneys' fees and costs, together with such other, further, and different relief as the Court deems just, equitable and proper.

## COUNT II – FRAUDULENT INDUCEMENT

34. Plaintiff repeats and re-alleges each of the foregoing allegations in paragraphs 1 – 25 as if more fully set forth at length herein.

35. Defendant, and Jason, made multiple misrepresentations, and omissions, of material fact to Plaintiff with respect to Pharoah's soundness, health, and suitability.

36. Defendant, and Jason, represented to Plaintiff that Pharoah was fit for his intended use, and that the "clubbed foot" was of no concern.

37. At the time Defendant, and Jason, made the misrepresentations, and omissions, of material facts, they knew that they were false, and they intended that Plaintiff would rely on them, which she did in proceeding with the purchase of Pharoah.

38. As a result of Defendant's, and Jason's, misrepresentations, and omissions, of materials fact, Plaintiff has suffered, and continues to suffer, substantial damages.

WHEREFORE, Plaintiffs demands judgment against Defendant for damages in an amount to be determined, and for such other, and further, relief as the Court deems just, equitable and proper.

## COUNT III – NEGLIGENT MISREPRESENTATION

39. Plaintiff repeats and re-alleges each of the foregoing allegations in paragraphs 1 – 25, as if more fully set forth at length herein.

40. Defendant, and Jason, made multiple misrepresentations, and omissions, of material fact to Plaintiff with respect to Pharoah's soundness, health, and suitability.

41. Defendant, and Jason, represented to Plaintiff that Pharoah was fit for his intended use, and that the "clubbed foot" was of no concern.

42. At the time Defendant, and Jason, made the misrepresentations, and omissions, of material facts, they knew, or should have known, that they were false, and they intended that Plaintiff would rely on them, which Plaintiff justifiability did in proceeding with the purchase of Pharoah.

43. As a result of Defendant's, and Jason's, misrepresentations, and omissions, of materials fact, Plaintiff has suffered, and continues to suffer, substantial damages.

WHEREFORE, Plaintiff demands judgment against Defendant for damages in an amount to be determined, and for such other, and further, relief as the Court deems just, equitable and proper.

Dated: November 23, 2021                Respectfully submitted,

                                        LUBLINER LAW PLLC
                                        1645 Palm Beach Lakes Blvd., Suite 1200
                                        West Palm Beach, FL 33401
                                        Phone: 561-207-2018
                                        Fax:   561-207-2001
                                        rich@lubliner-law.com
                                        carolina@lubliner-law.com

                                        BY:   */s/ Richard S. Lubliner*
                                              Richard S. Lubliner, Esq.
                                              Fla. Bar No.: 0047741



## Horse Bill Of Sale Form

Seller: Printed Name __Kathleen Durso__
Address: __453 Shady Grove Rd, Morrison__
Zip __37357__   State __TN__
Home Phone __931-259-0488__

Buyer(s): Printed Name: __Janet York__
Address: __4267 Jaimee Leigh Dr.__
City __Milton__   State __FL__   Zip __32570__
Home Phone _____

### HORSE INFORMATION

This is to certify that the SELLER does hereby transfer, and convey to BUYER the following described horse.

1. Name: __Pharoah__
2. Color: __Chocolate__
3. Age __6__   DOB __3-8-2014__

**EXHIBIT "A"**

4. Breed __RM__        Sex > __Mare__ ____ Gelding __✓__

5. Registered With Any Registry:   Yes ____   NO __✓__

~~6.~~

Registration was provided with the shipper:   Yes ____   NO __✓__

Coggins and Health Certificate Provided To Buyer With ~~Shipper~~ Buyer:   Yes __✓__   No ____

Vaccination record provided by sellers vet:   Yes __✓__   No ____

Buyer has elected not to have pre-purchase vet exam:   Yes __✓__   No ____

Buyer has elected a pre-purchase vet exam and agrees to take the horse with the exams findings:   Yes ____   No ____   __N/A__

Consideration for this sale, the buyer(s) has paid to the seller a total of:

$ __8000 (Eight Thousand Dollars)__        In Form of:

Personal Check ____   Check # ____   Issued by: _____ Bank

Cashier's Check ____

Cash __✓__

Bank Wire ____

*All sales are final* – There are no warranties, guarantee, refund, on this said described horse. *No exceptions* -

Seller: __Kathleen Durso__        Date: __10-31-20__

   Sellers signature

Buyer(s): _____        Date: _____

   Buyers signature